RESCARRICK M. SMITH AND OTHERS v. ANTHONY APPLE-GATE.

1. A promissory note given by the applicants for a public road to a caveator against such road, in consideration of the caveator's withdrawing his opposition to the road, and permitting the return to be recorded, is void, being founded on an illegal consideration.

2. A contract on the part of the caveator to withdraw his opposition to the laying out of a highway, is against the policy of the law, and therefore void.

Error to the Circuit Court of the county of Mercer.

This was an action on the case, brought before the Mercer county Circuit Court, and tried in the term of March, 1850. The suit was founded on a promissory note, drawn by defendants (in the suit below) to the plaintiff. The declaration contains a count on the note and the usual common counts. The plea is the general issue.

On the trial, the plaintiff produced and proved the note, and rested his cause. The defendants therefore called, as a witness, Isaac W. Lanning, esquire, who testified as follows:

"I am acquainted with the circumstances attending the making of the note in question. The note grew out of the following transaction : An application was made, by certain persons, to the Supreme Court for the appointment of surveyors to lay out a public road, passing through parts of the counties of Middlesex, Mercer, and Monmouth. The defendants were interested, and were active in this application. Surveyors of the highways were appointed by the court, and I was present at this meeting. The defendants, or some of them, attended this meeting, advocating the road. The plaintiff, in conjunction with a large number of other persons, attended also on this occasion, and opposed the road. The surveyors laid the road, and the plaintiff entered a *caveat*, and called the freeholders to review the proceedings of the surveyors. Perhaps Kenneth Applegate, a relative of the plaintiff, was a joint caveator, but I am not certain of this. When the freeholders met, the defendants appeared before them, and took an active part. I attended as counsel for the plaintiff and other persons. The freeholders went against the laying of the road, and made their return accordingly. I was present when the note in controversy was given. Governor Vroom, who was counsel for the applicants of the road, Redford Job, the plaintiff, and myself were present on this occasion. Colonel Job and the plaintiff called at my office, and wanted me to go to Governor Vroom to make some arrangement in reference to the road, which was then in

controversy between them in the Supreme Court. It was in controversy on the return of the freeholders, and was after they had made their return against the laying of the road. I think the note was shown to me before we went to Governor Vroom's office. We found Governor Vroom at home. The wish of Colonel Job was, that Anthony Applegate should withdraw the opposition he was making in the Supreme Court. Anthony Applegate was seeking to sustain the return of the freeholders in the Supreme Court. Applegate agreed to do that, and let such action be taken on the part of the applicants as they thought proper. · He agreed to do this for the note, which was then passed to him in Governor Vroom's presence."

And, on cross-examination, the witness said, "The opposition in the Supreme Court was withdrawn by Anthony Applegate. At the interview spoken of in Governor Vroom's office, Governor Vroom and myself made the arrangement that I was to consent, as the attorney of Mr. Applegate, to the return of the freeholders being set aside. Upon the return of the freeholders, the applicants had obtained a rule to show cause why the return should not be set aside. Testimony on both sides was taken under the rule. Some of the freeholders were examined. Plaintiff was a large land owner, through whose farm the road ran, perhaps the largest land owner. The design in laying the road was to shorten the stage route. Smith, one of the defendants, was interested in a line of stages. Afterwards, in the Supreme Court, the return of the freeholders was set aside by consent. Governor Vroom and myself both signed our names to the rule setting aside the return. The road was confirmed, and ordered by the court to be recorded. I have heard the defendants say the road has been opened entirely through the land of the plaintiff, but not the entire route."

The defendants here rested their cause.

The plaintiff then offered John D. Rue, who testified :

" I am acquainted with the road spoken of. It was opened all through plaintiff's land by the overseer, Mr. Mount. Three bridges were constructed, one of which was a county bridge.

This was ordered to be done by the freeholders. The road runs about 600 yards over plaintiff's land, who has fenced it on both sides."

The cause was hereupon rested on both sides ; and, upon the motion of the counsel of the plaintiff, the testimony of the defendants was overruled by the court, and not suffered to go to the jury. A bill of exceptions was sealed, on the application of the counsel of the defendants.

A writ of error was brought to this court, returnable to July term, 1850. The errors assigned are as follows, *viz*:

1. That the judge permitted illegal evidence to go to the jury on the part of the defendant in error.

2. That the judge rejected competent and legal evidence offered on the part of the plaintiffs in error.

3. That the judgment ought to have been given for the plaintiffs in error, and not for the defendant in error.

Joinder in error.

The cause was argued at February term, 1852, before the CHIEF JUSTICE and Justices NEVIUS and OGDEN.

*Beasley*, for plaintiff in error, cited 1 *Aiken* 264 ; 4 *Mees. & Wels.* 360 ; 5 *Halst.* 87 ; 4 *Halst.* 381 ; 7 *Watts* 152 ; 5 *Watts & Serg.* 315.

*Lanning* and *Hamilton*, contra, cited *Rev. Stat.* 516, § 5, 10 ; 4 *Halst.* 110 ; 2 *South.* 578 ; *Chit. on Con.* 675 ; 7 *Simons* 337 ; 1 *Com. Dig.* " *Assumpsit* " *B* 1, 10 ; *Chit. on Con.* 663.

The CHIEF JUSTICE delivered the opinion of the court.

The only question in this cause is, whether the evidence offered on the part of the defendants below, and overruled by the court, showed that the note was founded upon an illegal consideration.

The payee of the note was one of the caveators against a public highway and one of the freeholders over whose land the road was laid out. The makers of the note were applicants for the road, and personally interested in having it opened. The surveyors (appointed on the petition of the applicants)

had made their return laying out the road. The freeholders, appointed on the application of the caveators, had made their return, certifying " that the road, as laid out by the surveyors, was *unnecessary and injurious.*" The applicants for the road had obtained a rule to show cause why the certificate of the freeholders should not be set aside, and evidence under the rule had been taken by the parties. Under this state of facts, three of the applicants for the road gave the note in question, in order to induce Applegate, the payee, to withdraw his opposition to recording the return of the road. Applegate agreed, in consideration of the note, to withdraw his opposition to the road, and it was further agreed by his attorney, in his presence, to consent that the certificate of the freeholders should be set aside, and the return recorded. Pursuant to this agreement, the certificate of the freeholders was subsequently set aside by consent, and the return of the road, as laid out by the surveyors, was recorded.

There can be no doubt of the right of the land holder over whose land a highway is proposed to be laid out to sell either the land itself, or the right of way over it. Nor is it perceived that there can be any impropriety in the applicants for the road purchasing either the land or the right of way. But it is clear, from the evidence, that neither a sale of the land itself, nor of the right of way over it, formed the consideration of the note in question. No offer was ever made, either by the land holder to sell, or by the makers of the note to purchase. The evidence shows that the consideration of the note was of a totally different character. It was to remove the opposition made by the payee, as a caveator, to the laying out of the road, and to obtain his consent to setting aside the certificate of the freeholders, that the road was unnecessary and injurious, and thereby to obtain a confirmation of the return of the road.

Was such consideration legal ? If the contract on the part of the payee was repugnant to sound policy, or in contravention of the policy of the statute, the consideration of the note was illegal, and the contract founded upon it was void. 2 *Kent's Com.* (2d ed.) 466 ; *Chit. on Bills* 92 ; *Sharp* v. *Teese,* 4 *Halst.* 352 ; *Gulick* v. *Ward,* 5 *Halst.* 87.

The laying out of highways is peculiarly a matter of public concern. Its design is to promote not private rights, but the public convenience. Private interests are affected, but incidentally only, in pursuit of the public good. Public highways, indeed, are one of the few objects for which the state exercises the right of eminent domain in taking private property for public use. It is clearly a matter of public policy that highways should be laid out whenever and wherever the public good requires it. It is equally a matter of public policy that such roads as are unnecessary and injurious should not be laid out. They are to be opened and maintained at the public expense. The opening, therefore, of an unnecessary road is a public injury, no less than a wrong to the individuals whose property is immediately affected. It increases needlessly the public expenditure and the burthen of taxation ; hence the law, while it intrusts the laying out of roads to the surveyors of the highways, subjects their decision to a review by the chosen freeholders, who are specially charged, and are presumed to be familiar with the pecuniary interests of the county.

It is true that in opening or vacating a highway individual interests are unavoidably involved. It is equally true that the law intrusts the application for the road and the opposition to private hands. It presumes that the public good will be most effectually promoted through the instrumentality of private interests. No public officer is charged with the duty of having necessary highways laid out, or of vacating such as are unnecessary. Any one whose convenience will be promoted may become an applicant for the laying out of a road. Any one aggrieved may *caveat* against it. Nor is the right to *caveat* confined, as was suggested upon the argument, to the land holder whose land is taken for the road. " Any person injured or aggrieved by the laying out of a road " may file a *caveat*. The comprehensive phraseology of the statute clearly includes not only every land holder whose land is taken for the use of the road, but every citizen whose taxes would be increased by the laying out of a useless or unnecessary highway.

But although the application be made, and the *caveat* filed exclusively from considerations of private interest or conve-

nience, the proceeding is essentially of a public character. The public are directly and immediately interested in the result. The applicants for the road, and the caveators against it, do not occupy the position simply of *actor et reus*. They are public procurators ; voluntarily so, it is true. They are at liberty to assume it or not. They may abandon it at their pleasure ; but while they occupy it, they act no less for the public than for themselves.

Nor does the legality of the contract depend upon the question, whether private rights only are primarily affected. Though the controversy involve merely a question of private right, public policy may prohibit certain modes of adjustment. Thus the opposition made by a creditor to the discharge of an insolvent debtor is a controversy purely of a private character. It affects only individual interests. The creditor is seeking the payment of his debt. He is not bound to oppose the discharge of his debtor as an insolvent. He may, at his pleasure, abandon his opposition ; but upon the clearest considerations of public policy, he may not bind himself to abandon the contest, nor stipulate to receive a price for so doing. The grounds of the rule are clearly and forcibly stated by Chief Justice Ewing, in *Sharp* v. *Teese*, 4 *Halst.* 352.

The same considerations apply with increased force to a controversy touching the laying out of a public highway. Any one aggrieved is at liberty to *caveat* against the road. He is under no obligation to do so. He may, at his pleasure, abandon his opposition. But he may not lawfully bind himself to withdraw his opposition, nor may he contract to receive a price for so doing. The obvious and unavoidable tendency of such practice to unjust litigation, the lure it would hold out to private cupidity, to the great detriment of public interests, render it necessarily repugnant to the policy, and subversive of the beneficent designs and provisions of the statute.

It is very clear that the contract in question never could have been enforced against the caveator. If the caveator, having agreed to withdraw his opposition, and having received a price for so doing, had refused to comply with his contract, and persisted in his opposition to the road, this court

surely never would, and never could have enforced a compliance with the contract on his part, nor awarded damages for his non-compliance. The contract upon him would not have been obligatory. This consideration, alone, demonstrates that the contract is illegal, as against public policy. The contract, moreover, to be valid, must be binding upon both parties. If not binding upon one, it is binding upon neither. And if the contract of the caveator is illegal, and by reason of its illegality forms no valid consideration for the contract of the applicants, the execution of the illegal contract constitutes no better consideration. When the note in question was given there was no consideration for the promise on the part of the makers, but a promise upon the part of the payee, illegal, inoperative, and not binding upon him. The contract was void. The fact that it has been executed by one of the parties, will not authorize the enforcement of an illegal contract as against the other.

The present case affords a most striking instance of the impolicy and danger of sanctioning the contract. The road in question had been pronounced by the freeholders (the tribunal designated by law for the final settlement of that question) *unnecessary and injurious.* So far as appears by the case, there was no ground to set aside their proceedings as illegal or invalid, and yet the court are induced, by the consent of an individual over whose land the road was laid out (and that consent, as it now appears, purchased by a pecuniary consideration), to order the return of a road, adjudged by the only competent tribunal *unnecessary and injurious,* to be recorded. The expense of opening an unnecessary and injurious road, and it may be of building costly bridges, is thus imposed upon the community. And the wanton injury of taking private property not required for the public use without compensation, is inflicted upon every land holder over whose land the highway is laid out, except the individual by whose instrumentality the wrong was inflicted. It is impossible to regard the contract otherwise than as prejudicial to the public interests, and directly in contravention of the policy of the statute. The cases of *Sharp* v. *Teese,* 4 *Halst.* 352, and of *Gulick* v. *Ward,* 5

*Halst.* 87, and the principles upon which those cases were decided, must control the case now under consideration.

It may be that the transaction, as between the parties, was fair, and that no fraud was meditated or actually committed. It may be that the makers of the note have received a full equivalent for the price which they assumed to pay. It may be that the owner of the land would receive, by the payment of the note, no more than a fair equivalent for the land taken for the road. But courts cannot lend their aid nor the sanction of the law to enforce a contract in contravention of sound policy and subversive of the interests of the public.

The judgment below must be reversed, and a *venire de novo* awarded.

CITED *in* State v. *Stout,* 4 *Vr.* 43; *Church* v. *Muir,* 4 *Vr.* 322; *State* v. *City of Elizabeth,* 6 *Vr.* 357.